Mrs. Jimmie LEONE, Individually, and as Trustee for David Douglas Leone, Plaintiff,

v.

HESS PIPELINE COMPANY, Defendant.

Civ. A. No. H80–0082(R).

United States District Court, S. D. Mississippi, Hattiesburg Division.

June 9, 1982.

David H. Massey, Laurel, Miss., for plaintiff.

Christopher A. Shapley, Jackson, Miss., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

This action for damages brought by plaintiffs, Mrs. Jimmie Leone individually and as trustee for David Leone, a minor against defendant, Hess Pipeline Company, was tried before the Court without a jury on March 29 and 30, 1982 in Hattiesburg, Mississippi. The Court, having considered the testimony of the witnesses, the exhibits introduced in evidence, and the proposed findings of fact and conclusions of law submitted by the parties, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The plaintiffs are resident citizens of Mississippi and the defendant is a Delaware corporation, registered to do business in the State of Mississippi. Plaintiffs seek to recover damages for approximately 87 acres of timber on their land which was destroyed when the ground on which it stood was flooded as the result of a dam which was constructed by beavers in the area of a pipeline right-of-way defendant had acquired from plaintiff's predecessors in title.

In October 1963, J. Gambrell Ainsworth and his brother, Billie Joe Ainsworth, predecessors in title to the plaintiffs, sold and conveyed to defendant Hess Pipeline Company (hereinafter "Hess") a right-of-way, 35 feet in width, over and across the SE ¼ of Section 32, Township 10 North, Range 14 West, Covington County, Mississippi. This right-of-way was conveyed to Hess for the purpose of constructing, maintaining and operating thereon a pipeline for the purpose of transporting oil, gas, steam or similar other substances. After the pipeline was constructed, the width of the right-of-way reverted from 35 feet to 25 feet for operational and maintenance purposes.

Under the terms of the right-of-way agreement executed by the Ainsworths and a Hess representative, Hess had the right to do whatever was required for the enjoyment of the rights granted, including the right of clearing said right-of-way of timber, and of ingress and egress to and from the tract of land for the purpose of laying, maintaining, repairing, renewing, altering, changing the size of and removing the pipeline.

In October 1963, Hess paid the Ainsworths $2,692.00 in full satisfaction of and as compensation for all rights granted under the right-of-way agreement and for all damages caused by the construction, maintenance, operation, repair and removal of the pipeline. The pipeline was constructed across the Ainsworth property during October and November, of 1963. On November 18, 1963, J. Gambrell Ainsworth certified in writing that the construction of the pipeline across his property and the clean-up after such construction was satisfactory to him.

Sometime prior to 1972, beavers, semiaquatic rodents with webbed hind feet and broad flat tails renowned for their dam-building skills and valuable fur, began construction of a dam in the vicinity of the pipeline right-of-way. The dam was first observed by Douglas Leone, husband and father of plaintiffs, in 1972 or 1973 at which time the dam was about one quarter of a mile long and about six inches high.

In 1975 when the depth of the water behind the beaver dam was between three and four feet, Douglas Leone telephoned Hess and informed them of his intentions to blow up the beaver dam with ammonium nitrate and dynamite. Following this phone call, Hess directed two of its employees, Webb Pace and Aaron Walters, to break up the beaver dam. Using picks and shovels, Pace and Walters broke the dam in two or three places. Three or four weeks later Hess sent a three man crew out to the property again and they broke the dam in ten or twelve places. In the interim, Hess

had contracted with J. D. Cooley and Son, oilfield contractors, to break the dam with a backhoe. Cooley was unsuccessful in those efforts because the backhoe got stuck in the mud 75 to 100 yards from the beaver dam.

In 1977, Douglas Leone again called Hess and asked them to remove the beaver dam. A. J. France, General Manager of Hess at its Heidelberg, Mississippi office, advised Lamar Trammel that the request would be denied because the beaver dam was not Hess' responsibility.

In August 1978, Douglas Leone again called Hess to tell them that he intended to use explosives to remove the beaver dam. In an effort to maintain good relations and to avoid danger to the pipeline, Hess hired another crew to break the dam with a backhoe. This time the dam was broken in three places about 20 feet wide each.

In September 1978, Douglas Leone called Billy Green, Assistant Supervisor of Hess, and told him that he was going to dynamite the beaver dam the following weekend. Billy Green personally inspected the area in which the beaver dam was located and observed that the beavers had built the dam back nine inches in each place where it had been broken only two weeks before. Green informed Fravee of the telephone conversation with Leone, and Fravee instructed Green to tell Leone that Hess had done all it was going to do about the beaver dam because Hess was not responsible for the dam.

From 1972 until the time this suit was filed, plaintiffs made only one attempt to break the dam by installing a four inch galvanized pipe through the dam. This pipe was quickly covered by the beavers. Expert testimony confirmed what this Court had learned through previous experience with beavers that the only 100% effective method of ridding oneself of a beaver dam and its attendant problems is to first, eliminate the beavers and second, destroy the dam.

Both sides in this controversy made extensive efforts at trial to establish the location of the beaver dam, as being either on the right-of-way or off the right-of-way.

While beavers may be master dam builders, they seldom build their dams in straight lines. The Court finds that the beaver dam was located both on and off the right-of-way.

## CONCLUSIONS OF LAW

■ It is plaintiffs' contention in essence that they are entitled to recover for the water damage done to the timber located on their property because the defendant failed to maintain, operate and repair the surface of the pipeline right-of-way in accordance with its obligations under the Right-of-Way Agreement. With this contention, this Court cannot agree. The Right-of-Way Agreement gives Hess the right to "construct, maintain, operate, change the size of, and remove *one and only one pipeline* through over and across the land." Further, Hess has the right to do whatever may be required for Hess' enjoyment of the aforesaid right. The Right-of-Way Agreement specifically states that in order to enjoy its right, Hess has the right of clearing the right-of-way of timber and of ingress and egress to and from the Leone property for the purpose of laying, maintaining, repairing, renewing, altering, changing the size of, and removing the pipeline. All of Hess' rights under the Agreement focus exclusively on the *pipeline*.

Under the Agreement, the pipeline was to be "buried at a sufficient depth so as not to interfere with the cultivation of the land in said right-of-way..." Dominion, control, and use of the surface of the right-of-way therefore remained in the hands of plaintiffs, as owners of the soil, subject only to Hess' right to conduct activities on the surface *if* such activities were connected with the enjoyment of the pipeline.

In the instant case, the activities that were conducted on the surface of the right-of-way were the activities of third parties, the beavers. There was no evidence that the beavers' activities in any way affected Hess' use and enjoyment of its pipeline. There was expert testimony presented by

both sides that the beavers' activities accounted for not less than $79,000.00 nor greater than $85,000.00 worth of damage to timber growing on plaintiffs' land. Hess was under no obligation to clear the surface of the right-of-way to protect plaintiffs' cultivation of the surface. Plaintiffs had the right to cultivate the surface and the concurrent right to do whatever was necessary to protect that right. Hess would have been obligated to clear the surface of the right-of-way to protect plaintiffs' cultivation interest only if the threatened injury to plaintiffs' cultivation of the land emanated from the pipeline itself. Plaintiffs' damages originated from the beavers' dam building activities, not from Hess' pipeline. The beavers worked on the surface in and around the right-of-way. Their activities directly affected the cultivation of the land, not the use and enjoyment of the pipeline. Therefore, the Court concludes that Hess had no duty under the Right-of-Way Agreement to keep the surface of the right-of-way clear to protect the cultivation interests of plaintiffs in the surface of their land.

The granting of a right-of-way over land does not pass any other right or incident. The owner of the soil retains full dominion over his land subject merely to the right-of-way. The owner may make any use of his land which does not interfere with a reasonable use of the right-of-way. *Sumrall v. United Gas Pipe Line Co.*, 232 Miss. 141, 97 So.2d 914, 916 (1957). In this case, the beneficial use of plaintiffs' land for the cultivation of trees was threatened by wild animals on plaintiffs' land. The duty to protect this interest was their own. Plaintiffs could have taken whatever steps were necessary to rid themselves of the beavers so long as they did not interfere with defendant's lawful use of its easement.

Plaintiffs also argue that Hess assumed the obligation of removing the beaver dam by sending crews out to break the dam. The evidence reveals that Hess attempted to break the beaver dam only after Douglas Leone conveyed his intention to blast the dam with dynamite and ammonium nitrate. The possible consequences of this action on the pipeline and its operation are obvious. It can hardly be said under such circumstances that Hess assumed an independent obligation to finally and completely eliminate the beaver dam.

For the reasons set forth above, this Court is of the opinion that a Final Judgment of Dismissal should be entered herein in favor of the defendant, each party of course to bear its own costs. An order in accordance with this Opinion shall be submitted by the parties within the time prescribed in the Local Rules.