LINDSEY *v.* SHAW, et ux.

Division B. Dec. 18, 1950.

No. 37727 (49 So. (2d) 580)

334

J. E. Stockstill, for appellant.

Morse & Morse, for appellee.

**Hall, J.**

Appellant is the owner of the west 25 acres of NW¼ of NW¼ of Section 30, Township 4 South, Range 17 West. Approximately 900 feet north of her said land there is a public highway which runs in an easterly and westerly direction. Appellees own the land lying between said highway and appellant's land, having acquired the same from Lamont Rowland in 1941. Appellant brought suit and prayed for a decree establishing by prescription an easement in her favor for a passageway across appellees' said land along the route of a recognized old settlement road which leads from appellant's home to the public highway. She further prayed for a mandatory injunction to compel appellees to restore said road to a passable condition by removing gates across said settlement road on the north and south lines of appellees' land and by leveling off and grading down certain terrace rows which appellees had constructed across said settlement road, or, in the alternative, that appellant be authorized to restore said road and charge the cost thereof to appellees with a lien on their land to secure payment of such cost. She further prayed for damages occasioned by the erection of said gates and the construction of said terrace rows and for an injunction restraining appellees from obstructing, fencing, plowing up or damaging said settlement road in the future, and for general relief. After conclusion of the evidence the Chancellor adjudged and decreed "that complainant herein be allowed to use the passageway across the lands of defendants, which she now uses across the said defendants' land, so long as complainant keeps the gates shut so that stock cannot enter or depart into or from the lands of the defendants, and that all

other claims by the complainant are hereby denied'' and the complainant was taxed with all court costs. From that decree she appeals and assigns as error the failure of the decree to establish a permanent easement in her favor, the broad terms of the decree in compelling appellant to keep the gates shut regardless of who may have opened them and in limiting her easement to that period of time when she keeps the gates shut, and in failing to require appellees to yield a reasonable passage-way over the land with the right to keep the road in repair, and in denying her injunctive relief to protect her rights in said easement and in assessing her with all the court costs.

There is no substantial dispute in the evidence. It shows that appellant has used the road across appellees' land for the past 30 or 35 years without question or dispute or interference until the events hereinafter related. Before the prevalent use of automobiles it was used with animal-drawn vehicles, even prior to the time when Mr. Rowland acquired the land. About 1931 or 1932 Mr. Rowland planted the land in tung trees; in so doing he did not plant any trees in the road but left it open for use by appellant; in 1941 he sold the property to appellees. Mr. Shaw fenced the land, according to his testimony, ''several years later'', but no witness was able to fix the exact year. It is reasonably established, however, that it was less than four years prior to the trial. Gates were installed across the road at both places where it crossed Shaw's line. Mr. Shaw entered upon the roadway with a bulldozer and pushed up terraces running across the road; they are variously estimated as being from 18 inches to 3 or 3½ feet high; one of the witnesses for appellees said they were from 2 to 2½ feet high. The road was thereby rendered completely impassable in rainy weather and virtually impassable even in dry weather. Since construction of the terraces only two vehicles have been shown to have traveled it, one being a Jeep and the other a truck of some kind. Appellant

and her family have continued to use the road as a passage-way by foot only. It is almost one-fourth of a mile from the public highway to appellant's home; her husband has had to carry by hand or on his back every article which has reached her home from the outside world, including all groceries, stock feed and the like. Because of the inaccessibility of the home the doctors have refused to come and see sick members of the family; one child when ill had to be carried out to the highway and there placed in an automobile for transportation to a doctor's office. Before the building of the terraces motor vehicles could travel the road in any kind of weather, but it is conclusively shown, and without any substantial dispute, that such travel is now impossible, and yet the decree in this case grants appellant no relief except the right "to use the passage-way across the lands of defendants which she now uses across the said defendants' land." This was in effect a denial of her right to reach her home with a motor vehicle or any other means of conveyance, notwithstanding the fact that she had exercised such privilege for at least three times our ten-year prescriptive period, and it left her only the right to reach her home by foot. In our opinion this limitation in the decree was erroneous, and this is emphasized by the fact that it is conclusively shown that there was no other available route over which appellant could reach a public highway.

It has been held in this state that an easement for a passage-way over the lands of another may be acquired by the use of such passage-way and the assertion of such right for a period of more than ten years. University of Mississippi v. Gotten, 119 Miss. 246, 80 So. 522, 523. This is in accord with the decisions elsewhere. 28 C. J. S., Easements, Section 18, p. 662; 17 Am. Jur., Easements, Secs. 55-56, p. 967-969.

It was held in the Gotten case, supra, that the University had the right to erect gates across the passage-way; this was based upon a finding that the erection

of gates would not unreasonably interfere with the enjoyment of the easement. Our Court pointed out that the authorities are not in harmony on this question, and we here find, just as was found in the Gotten case, that the erection of gates by appellees was not an unreasonable obstruction of appellant's use of the easement. It was shown in this case that the Shaws are cultivating the land between the tung trees and are using it for the pasturing of cattle. According to 17 Am. Jur., Easements, Sec. 122, the weight of authority is that in the case of agricultural land the owner of land burdened with a right of way acquired by prescription may erect gates at the ends thereof even though no gates were erected until after acquisition of such easement by prescription.

In the Gotten case, supra, a lock was put on the gate and his wife was furnished with a key thereto. In this case Mr. Shaw testified that at times he had put a lock on the gates here in question; there was also testimony that the gates had been nailed up at times, though he denied knowledge of that. Mrs Lindsey's home, as heretofore pointed out, is about one-fourth of a mile from the public highway. A tung orchard with trees about eighteen years old lies between her home and the highway. According to the plat here in evidence the passage-way through the tung orchard is not perfectly straight. Consequently it is impossible for Mrs. Lindsey to know when some member of her family or some friend or neighbor desires to use this passage-way, and in our opinion the maintenance of locks on these gates is an unreasonable burden upon the easement which she owns. As was said in the Gotten case "the facts of each case should control."

The decree hereinabove quoted is in our opinion entirely too broad in imposing upon appellant the absolute and unqualified obligation to keep the gates closed at all times regardless of circumstances. In the Gotten case Mrs. Gotten was held responsible for keeping the gate closed "when any of Gotten's people passed through

the gate.'' She was not charged with the obligation of closing it when some stranger should open it. One of the gates here in question opens into the public highway completely out of sight of appellant's home. She should certainly not be compelled to keep the gates closed, under pain and penalty of losing her easement, if some traveler along the public highway should open the gate and fail to close it, or if one of appellees' employees in the orchard should open it and fail to close it. The most that should be required of her is to keep the gates closed when they are opened by herself or employees or the members of her family, or persons under her control. Failure in this respect will render her liable in damages and subject to injunctive relief. 28 C. J. S., Easements, Section 94, p. 775.

██ ██ The evidence also shows that the tung trees by the side of the roadway have grown to such size that the branches thereof overhang the roadway and seriously interfere not only with travel but even with persons walking along the roadway, and, as heretofore stated, the roadway is almost completely obstructed by the high terrace rows constructed by appellees. These obstructions render the easement practically useless and constitute an unreasonable interference with the rights of the owner of the dominant estate. They were created by the owner of the servient estate and render him not only liable in damages but also subject to injunctive relief. 17 Am. Jur., Easements, Secs. 114, 151, 152, and 153.

██ ██ Such an obstruction constitutes a private nuisance and the owner of the easement is even authorized to take the law into his own hands and remove the obstruction without thereby becoming a trespasser, provided he is able to do so without provoking a breach of the peace. 17 Am. Jur., Easements, Sec. 119. ██ ██ The owner of a prescriptive easement, however, cannot extend it beyond the actual user nor beyond such width as is reasonably necessary for the purpose for which it was created or acquired. 17 Am. Jur., Easements, Sec. 105. ██ ██ Furthermore, in this case appellant is the

owner of an easement for a roadway only and is entitled to work the road at her own expense so as to keep it reasonably usable as a private way. Quin v. Sabine, 183 Miss. 375, 384, 183 So. 701.

 In situations such as here presented the rights, privileges, duties and obligations of the several parties are reciprocal. Where a private right of way exists, the owners of the dominant and servient tenements must each use the way in such a manner as not to interfere with one another's utilization thereof. Feld v. Young Men's Hebrew Ass'n., 208 Miss. 451, 458, 44 So. (2d) 538. It will save future trouble and litigation between the parties if they will each hereafter faithfully respect the rights of the other as herein set forth; appellant may use the roadway and may keep it in repair but in so doing she may not go beyond the limits thereof and she is under obligation to see to it that the gates are not left open by any member of her family or by any person in her employment or under her control, failing in which she may become liable to a suit for damages as well as injunctive relief; appellees may likewise use the roadway for any purpose which is not inconsistent with the dominant easement of appellant; they may maintain the gates at each place where the roadway crosses their land, but may not otherwise obstruct or interfere with free and reasonable passage-way over the easement as a means of ingress and egress to and from appellant's land and the public highway.

 We find no authority for assessment of the court costs against appellant under the facts of this case. Reinecke v. Gibbs, 196 Miss. 247, 16 So. (2d) 853, 18 So. (2d) 442.

The decree of the lower court is accordingly affirmed insofar as it grants to appellant the right to use the said passage-way across the lands of appellees, but it is modified to the extent that she is not required to leave it as it now is but is entitled to have it opened at the expense of appellees by removing the said terrace and tree obstruc-

tions to the limit of its former width, after which all repairs and work upon the roadway shall be done by the appellant at her own expense; it is further modified to the extent that appellant is charged with the duty and obligation of closing the gates each time they are opened by herself or the members of her family or by her employees or persons under her control, failing in which she will be liable for the ensuing damage as well as subject to injunctive relief. The decree is affirmed in denying appellant's prayer for removal of the gates, but is modified to the extent that appellees shall not lock the said gates or nail them shut or otherwise fix them so as to prevent their opening. The decree will be reversed in denying to appellant injunctive relief, and such relief is here granted to the extent that appellees are enjoined from obstructing the said roadway or otherwise preventing appellant from using the same to the width necessary for normal vehicular traffic. The decree is also reversed to the extent that all court costs in the lower court and on appeal are assessed against appellees.

Modified and affirmed in part, and in part reversed and decree here.