SUMRALL *v.* UNITED GAS PIPE LINE Co.

No. 40570          November 18, 1957          97 So. 2d 914

*Alexander & Alexander,* Jackson, for appellant.

*W. O. Crain,* Shreveport, Louisiana; *Avery & Putnam,* Jackson, for appellee.

Hall, J.

Appellant is the owner of approximately 756 acres of land situated in Rankin County. Prior to his acquisition of this land, and in the year 1930, two easements were granted by his predecessors in title over parts of this land for the purpose of constructing, maintaining and operating a pipe line or lines consisting of one or more pipes and appurtenances thereto, including telephone or telegraph lines in connection therewith, and the free right of ingress and egress to and from said right of way for the purpose of laying, constructing, maintaining, repairing, replacing, operating or removing at will said pipe line and appurtenances thereto, to have and to hold the said right of way (including all rights of ingress and egress as above set forth) unto the said purchaser, and successors and assigns forever, expressly reserving the use and enjoyment of said premises except for the purposes herein conveyed to purchaser, together with a provision that the purchaser shall bury and maintain said pipe line below plow depths. There was also a provision that the purchaser should pay all damages to fences, crops and timber which may be suffered by reason of installation, maintenance, operation or alteration of said pipe line and appurtenances thereto. Shortly afterward the appellee acquired the said rights of way by purchase and in the year 1946 the appellee purchased an additional right of way over another portion of said land. The appellant acquired said land in 1951 subject to the said rights of way theretofore granted. All of these easements are in substantially the same or similar form.

High pressure pipe lines for the transportation of natural gas were built and in the first two instances mentioned have been in operation continuously since the year 1930. One of these lines is commonly known as the Jackson-Mobile pipe line and serves numerous towns and cities in south Mississippi and extends on to Mobile, Alabama. Another line is commonly known as the Jackson-Philadelphia pipe line and is used for the transportation of natural gas to Philadelphia, Mississippi, and numerous other cities in central Mississippi. About August 1955 appellant built on his land a lake of about 30 acres in size, which lake was filled with water about January 1956. One of the pipe lines lies underneath this lake. About March 1956 appellant started the construction of another lake of approximately 240 to 250 acres, which will be referred to as the large lake, and built levees of dirt about one and one-half miles in length so as to impound the water on three sides of the large lake. It appears that this lake would submerge approximately 2485 feet of the pipe line, some of which would be at a depth of 17 feet. Shortly after the appellee discovered what appellant was doing there were numerous conferences held with the appellant to try to work out some suitable and satisfactory arrangement whereby he might be permitted to complete the large lake, but they were never able to reach an agreement and eventually on August 27, 1956, appellee filed this suit in the chancery court against the appellant seeking to enjoin him from permitting the large lake to fill with water and also seeking to enjoin him from maintaining the water over the pipe line underneath the small lake.

The case was tried on the merits before a special chancellor. There is no substantial dispute in the facts presented at the hearing. The pipe lines are of old construction with thin walls and notwithstanding the fact that the lines are buried approximately 2½ feet under the ground the proof is that there is a real danger of these

lines, when the soil under the lakes has become water-logged, floating to the top and breaking, or, if they did not float to the top there is a constant danger of these old pipes springing leaks caused from rusting, and in either event there would be a tremendous expense in repairing them as well as an interruption of service to the various cities supplied by them, including the Mississippi State Hospital at Whitfield and the Marquette Cement Company near Brandon. The proof shows that the company has no means or equipment to repair a break or leak under water. The proof shows that there have been approximately 4,900 leaks in the lines in question in the past 10 years and that there are approximately 1,800 miles of pipe line in the Jackson District and that in addition to the leaks the company has had to replace 177,500 feet of line. The proof is that to repair the ordinary leak on dry land costs an average of approximately $300, but that under water an average split in the pipe would cost $4,000 and a bad break under water would require equipment which would run the cost of repair to approximately $38,-000. The proof is that the lines of the company cross rivers and canals where the pipe is placed under the water, but in these instances the line is built with that thought in mind with pipe of considerably additional wall thickness and with additional coating and that it is heavily weighted down. The proof shows further without dispute that the present lines could be taken up and other lines built around the large lake at a cost of $72,400 and that the total cost of constructing an additional line around both lakes would be $85,400. The proof is that appellant has installed two 12-inch outlets and that if the large lake is filled with water it would require 167 days to drain it.

At the conclusion of the hearing the chancellor found that the appellee is entitled to the permanent injunction prayed for, and appellant was directed to lower the water

level in the small lake, which was already full, to a point where said water no longer encroaches upon or covers the complainant's pipe line and the decree further permanently enjoined the appellant from thereafter allowing the water of said small lake to encroach upon or cover said pipe line, and the decree further enjoined him from allowing water to accumulate in the large lake to the extent that the same encroaches upon or covers said pipe lines, and he was enjoined and prohibited from completing the large lake and from constructing the same in such manner that the appellee's pipe line will not be protected from encroachment by both normal and abnormal rainfalls, and he was enjoined from denying the appellee the full right of ingress and egress to and from its said easements and to and from the pipe lines and appurtenances located on each of said easements and from preventing the appellee from exercising its right to patrol, inspect, operate, repair and replace said pipe lines and appurtenances by all usual and customary methods.

The only question involved in this case is whether the acts of appellant in building these lakes and inundating the pipe lines constitutes an unreasonable interference with the rights conveyed to the appellee. ▮▮ We are of the opinion that the right of the pipe-line owner or operator to use the land across which his pipe extends includes the right to exercise all the incidents necessary for the full enjoyment of that easement, one of which incidents is ready accessibility to the line for maintenance and repair, ▮▮ and that the erection or creation of any obstructions on or over a pipe-line right of way constitutes an unwarranted interference with the rights of the pipe line company, and that it is entitled to protect these rights by injunctive process.

In the case of Feld v. Young Men's Hebrew Assn. of Vicksburg, 208 Miss. 451, 44 So. 2d 538, we said: "In situations such as here presented the law is succinctly but clearly stated in 2 Thompson on Real Propery, Per-

manent Edition, p. 190, Section 584, as follows: 'Where a private right of way exists, the owners of the dominant and servient tenements must use such way in such a manner so as not to interfere with one another's utilization thereof. The grant of a right of way over land does not pass any other right or incident. The owner of the soil retains full dominion over his land subject merely to the right of way. He may make any use of his land which does not interfere with a reasonable use of the way.' See also C. J. S., Easements, pp. 770-772, Section 91, and 17 Am. Jur. p. 993-996, Easements, Section 96-98.''

The case of Lindsey v. Shaw, 210 Miss. 333, 49 So. 2d 580, involved a road right of way which was acquired by prescription and not by a specific grant, and a purchaser of adjoining land planted and cultivated tung trees by the side of the roadway and cultivated them until they had reached such size that the branches thereof overhung the roadway and interfered seriously with travel and also that the owner constructed high terrace rows to such extent that vehicular travel was prevented. And in that case we said: ''The evidence also shows that the tung trees by the side of the roadway have grown to such size that the branches thereof overhang the roadway and seriously interfere not only with travel but even with persons walking along the roadway, and, as heretofore stated, the roadway is almost completely obstructed by the high terrace rows constructed by appellees. These obstructions render the easement practically useless and constitute an unreasonable interference with the rights of the owner of the dominant estate. They were created by the owner of the servient estate and render him not only liable in damages but also subject to injunctive relief. 17 Am. Jur., Easements, Secs. 114, 151, 152, and 153. Such an obstruction constitutes a private nuisance and the owner of the easement is even authorized to take the law into his own hands and remove the obstruction

without thereby becoming a trespasser, provided he is able to to do so without provoking a breach of the peace. 17 Am. Jur., Easements, Sec. 119.''

In the case of Industrial Gas Co. v. Jones, 62 Ohio App. 553, 24 N. E. 2d 830, the facts were that a pipe-line easement across a 140-acre farm was granted and subsequently conveyed to the gas company. The terms of the easement were substantially the same as those which we have here involved. Subsequently the vein of coal under the entire tract of land was acquired by Jones subject to the pipe-line right of way. Jones started his mining operations for the coal. In the course of these operations a large quantity of gob or waste was dumped upon the pipe-line to an average depth of 4 to 5 feet for a distance of 492 feet, and this caused seepage through the soil and onto the pipe-line with chemicals which corrode steel and would cause pitting to occur in the pipe-line with subsequent danger, leakage and loss. In a suit between Jones and the gas company the Court of Appeals of Ohio said, after stating the issue between the parties: ''This issue must be determined in plaintiff's favor. The terms of the easement admit of no other construction. It plainly states that it is 'for the purpose of constructing, from time to time, and maintaining and operating, one or more lines of pipe for the transmission of natural gas, and with free ingress and egress to construct, operate, maintain and, from time to time, alter, repair and remove same.' The fact that the grantors reserved the use and enjoyment of the surface does not restrict the grant. It contemplates surface use for agricultural purposes and not the erection of structures and the changing of surface contour by dumping injurious waste, containing chemicals, on plaintiff's pipe line. If such were permitted the grant might be impaired.''

In the case of Mullins v. Metropolitan Street Ry. Co. 126 Mo. App. 507, 104 S. W. 890, an easement had been granted to the City of Kansas City for the construction of

a sewer line along the south 10 feet of the tract of land in question for a distance of 683.14 feet. The easement included the right to go upon the land to construct, repair and reconstruct said sewer and it retained the free and unrestrained use of the adjacent land except in such manner as would interfere with the free and unrestrained use of the sewer by the public. Subsequently the street railway company acquired the property subject to the sewer easement, and a few months later the City of Kansas City entered into a contract with Mullins to construct the sewer line. The street railway company entered upon the land acquired by it and built a number of railroad spur tracks across the sewer right of way and installed a number of heavy wooden beams across the right of way and so obstructed the sewer right of way as to prevent the use of teams and scrapers. Mullins brought a suit for damages against the street railway company and in passing upon the effect of the sewer easement the Court said:

"The deed to the city did not convey the fee to the land described, but only a right of way for the construction, maintenance, and reconstruction of a public sewer. As grantee of this right, the city acquired dominion over the land to the extent reasonably and conveniently required for the purpose of the grant. By necessary implication, it was given the privilege of free and unrestricted access to the land, the right to prepare it for the building of the sewer, the use of the removed earth for necessary filling, and, after the work was completed, the further right to enter the land in a reasonable manner for purposes connected with the maintenance or reconstruction of the sewer. The owner of the fee, while possessed of proprietary rights over the land, subject to the right of way, was not justified in exercising them in a manner to impair or obstruct the convenient enjoyment of the easement. In the use of the land, the rights of the owner of the easement were paramount to those of the owner

of the fee until the reasonable purposes of the grant were satisfied. Therefore the right of the defendant to erect its trolley poles on the right of way could not be exercised at all if the presence of the poles materially impeded the work of the contractor in laying the sewer, and it is immaterial that the placing of the poles on the right of way was necessary to the use which defendant was making of the adjoining property. Necessity, however great, could not give to defendant the right to invade the property rights its predecessor had granted. If the poles and the supports for them which defendant placed across the ditch constituted an obstruction to the work of building the sewer to an extent resulting in pecuniary loss to the contractor, a cause of action arose in favor of the latter for the recovery of the damages thus sustained.''

In the case of Central Kentucky Natural Gas Co. v. Huls, 241 S. W. 2d 986, the company had a right of way easement across a tract of land and a portion of the land was conveyed to Winchester Tobacco Warehouse Company for the purpose of erecting a sales warehouse thereon. The proposed site for the warehouse was over the gas company's pipe line. A request was made for a relocation of the pipe line and a new right of way grant was made under similar terms as those hereinabove mentioned in the present case and pursuant to this agreement the pipe line was relocated and the tobacco warehouse was built away from the pipe line. Thereafter, Huls and others undertook to construct a restaurant building across and over the pipe line as relocated and the gas company brought a suit to enjoin the erection of the restaurant building over its high pressure transmission line. The chancellor who heard the case denied the injunction and on appeal the Court of Appeals of Kentucky said:

''Under the provisions of the grant of right of way above it becomes immediately apparent that the dominant and servient owners have correlative rights. The dominant owner has the right to lay the line; he has the

right of access to make repairs and properly patrol the line and make such use of easement as is reasonable, but with as little burden on the servient estate as the nature of the easement and the object will permit. It is not meant that he shall have exclusive control of the right of way. On the other hand the servient owner has the right to use the land in any way not inconsistent with the rights granted under the easement or which do not become an encroachment upon or interference with the means and facilities the owner of the easement may lawfully use.

"The record shows this transmission line to be a high pressure line. It further shows the necessity of patrolling the line for the discovery of leaks, a responsibility placed upon the owner of the easement requiring a degree of care commensurate with the dangers reasonably to be apprehended from leaks in a high pressure line. * * *

"Authorities dealing with this subject are almost unanimous in denial of a right to construct a building over the right of way which would materially interfere with the free right to use the easement as contemplated by the parties. See Aboud v. Bailen, 289 Ky. 536, 159 S. W. 2d 410: Wunderlich v. Scott, 242 Ky. 481, 46 S. W. 2d 753; Collins v. Moore, 203 Ky. 503, 262 S. W. 632.

"This principle was recognized by both parties hereto as evidenced by the subsequent agreement for relocation of the line so as not to interfere with the erection of the tobacco warehouse.

"We call attention to the statement of appellees that they would either raise or move the building upon request that appellant might make proper inspection or properly patrol the line. This is an admission that there is a burden thrust upon the easement and a violation of the rights conferred by that easement even though it appears to appellees to be so minor as only to require a request to remove the building. Obviously, to allow the construction of a building over this high power trans-

mission line would be a burden upon the easement and an unwarranted violation of the rights created thereunder.''

We are of the opinion, in view of the authorities cited, that the appellee in this case had the right of free access to its lines for the purpose of making repairs and properly patrolling the line and to make such use of its easement as is reasonable, and that the appellant had no right to use his land in any manner which was inconsistent with the rights owned by the appellee, and specifically we are of the opinion and hold that the lakes in question constitute an unreasonable encroachment upon appellee's right of way and interference with the means and facilities of the appellee. Therefore we are of the opinion that the learned chancellor was eminently correct in granting the injunction and that the decree of the lower court should be affirmed.

We base our holding purely upon the facts in this case to the effect that the lakes in question constitute an unreasonable interference with the appellee's operation of its pipe lines. We do not pass upon the effect of the construction of buildings upon the right of way of a gas company crossing the average farm, and expressly pretermit the question until a case arises which presents it.

Affirmed.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.