618 So.2d 81 (1993)
Ollan K. ROWELL
v.
Dr. John N. TURNAGE, Sr.
No. 90-CA-0745.
Supreme Court of Mississippi.
April 22, 1993.
*82 Michael D. Jonas, Aberdeen, for appellant.
Jan P. Patterson, Patterson & Patterson, Aberdeen, for appellee.
Before DAN M. LEE and PRATHER, P.JJ., and PITTMAN, J.
DAN M. LEE, Presiding Justice, for the Court:

I.
Rowell sought mandatory and prohibitory injunctive relief in the Chancery Court to protect his and his grantees' use of a 15 foot wide private way of necessity ordered by the Board of Supervisors of Monroe County. He, as the dominant owner, asked the court to order the servient owner, Turnage, to remove three gates across the private way and refrain from "otherwise imposing any obstacles to his or the public's use of the private way, including Rowell's right to access utilities over the private way." The Chancellor found that the locked gates to which Rowell had a key did not constitute an unreasonable interference with Rowell's use of the private way for ingress and egress and that utilities could not be placed on the private way and denied injunctive relief. Rowell appeals raising three issues, only two of which are proper for our discussion:[1]
(1) Where one has been granted a private road across the land of another by the Board of Supervisors pursuant to Miss. Code Ann. § 65-7-201 (1972), can the owner of the servient estate maintain gates, locked and unlocked, across the roadway, when the private road owner's purpose for the road is to provide access to that segment of the public who will purchase lake shore lots from him?
(2) Where one has been granted a private road by the Board of Supervisors pursuant to Miss. Code Ann. § 65-7-201 (1972), can the owner of the servient estate prevent the owner of the private road from running utilities (water and electricity) down the private road, when the private road owner's purpose is to *83 develop the land to which the road runs as lakeshore lots for sale to the general public?
We find no error and affirm.

II.
Rowell owns property that is landlocked on three sides by a perpetual flowage easement owned by the United States of America and on the other side by land owned by Turnage. Access to his property is on the south by crossing land owned by Turnage. He has access to his property by:
(1) conveyance in a warranty deed dated June 11, 1936;
(2) oral and written permission of Turnage;
(3) Board of Supervisor order dated March 6, 1989;
(4) Chancery Court order dated August 7, 1990.

(1)
Conveyance by Warranty Deed. The deed from William F. Paine and Thomas F. Paine to Mrs. Christine R. Day contained the following language granting right-of-way:
And for the above recited consideration we convey and quit claim unto Mrs. Christine Rogers Day a right-of-way from the old road which lies along the western part of the Northwest quarter of said section, township and range where said old road way leaves the section line and enters upon and through our above described property and up to the Northwest corner of said section, township and range, and also from the Northwest corner of said section, township and range East along our North boundary line to the land above conveyed to Mrs. Christine R. Day. Said right-of-way conveyed on the North line of our property to be located on the North line of the property and not across the cultivatable land and said right-of-way to be not over fifteen feet in width.

(2)
Oral and written permission of Turnage. Paragraph 8 in the Stipulation of Facts provides:
8) Access to the Turnage property has been through locked gates since Turnage's purchase to the present. Turnage gave Rowell keys to the gates in 1987 when Rowell purchased his property and gave Rowell written revocable permission to cross his land on July 3, 1988.

(3)
Board of Supervisors Order. The order of the Board of Supervisors of Monroe County followed a hearing pursuant to Miss. Code Ann. § 65-7-201 (1972) which provides:
§ 65-7-201. Private way established.
When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damage assessed shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.
Rowell had petitioned the Board of Supervisors to condemn a sixty foot right-of-way on the West side of the Turnage land and to construct a public road or, alternatively, to establish a private way over the Turnage land for ingress and egress purposes. The Board concluded that the only feasible access to the Rowell property is across the Turnage land and granted a private way fifteen feet in width over the Turnage property over the road "as the same now exists." No appeal of the Board's order was taken.

(4)
Chancery Court Order. Still attempting to enlarge his right-of-way rights, on May 10, 1989, Rowell filed a complaint in *84 Chancery Court seeking injunctive relief against Turnage. Rowell wanted to prevent alleged obstructions to the private way by three gates and to enjoin Turnage "to remove those gates and to otherwise impose no obstacle to the plaintiff's use of the private way which includes his personal and the public's right of ingress and egress to his property and the plaintiff's right to access utilities to his property over the said private way." Following a hearing in which the parties filed a Stipulation of Fact, the Chancellor granted summary judgment to Turnage and concluded, among other things, as follows:
The Court finds that the Turnage property is burdened with a fifteen feet (sic) wide private way of necessity of ingress and egress to the Rowell property, as granted by deed to Rowell's predecessor, and as partially relocated by the Board of Supervisors in its Order.
* * * * * *
[T]he Court further finds that the presence of a locked gate, to which Rowell has a key, separating the Turnage tract from the public road does not constitute an unreasonable interference with the private way for ingress and egress to the Rowell tract.
* * * * * *
The Court finds that a grant of a private way of necessity for ingress and egress is a right of passage, and is not an easement for water, sewage or electric lines.
See Map attached as Exhibit "A".
Dr. Turnage acquired approximately 97 acres of land by deed dated April 30, 1969. Since purchasing the property, Turnage has maintained fences and gates necessary in his cattle operation; however, at all times he has furnished Rowell and his predecessors in title with keys to the locks on the gates. In addition to his oral permission, Turnage gave Rowell written permission to cross his land on July 3, 1987. Following the Corps of Engineers development of the Tennessee Tombigbee Waterway, portions of Rowell's and Turnage's property were subject to a perpetual flowage easement. The Corps of Engineers flooded most of the tract later acquired by Rowell in 1981 to create Aberdeen Lake. Rowell did not acquire the property until June 28, 1987, by a deed from Weyerhaeuser Company which used the property for timber growth and leased part for agricultural purposes. Rowell, before he acquired the land in 1987, knew it was landlocked because he first visited it by boat. He also knew that Turnage had the gates on his land, and that the only access to the land that he purchased was a 15 foot wide easement. Rowell purchased the land to develop a lakeshore subdivision and contemplated selling over 30 lots at a price of $10,000.00 each. At trial, Rowell claimed he had sold ten options to individuals desiring to purchase lots. Rowell sought through negotiation to acquire greater rights than his way of necessity all to no avail. Turnage insisted that his cattle operation required the fences and the gates and that he would honor the right of access that Rowell had but would not sell the land burdened by it.
Because Rowell's property interest in Turnage's land has been referred to interchangeably as "right-of-way" and "easement" some reference here to the basic definitions is in order.
The following definitions are found in Black's Law Dictionary, (5th ed. 1974):

Right-of-way:
As used with reference to right to pass over another's land, it is only an easement; and grantee acquires only right to a reasonable and usual enjoyment thereof with owner of soil retaining rights and benefits of ownership consistent with the easement.

Easement:
A right of use over the property of another; ...; a right in the ownership of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with the general property in the owner.
Right-of-way limited rights were discussed by this Court in Sumrall v. United Gas Pipe Line Co., 232 Miss. 141, 148, 97 So.2d 914, 916 (1957):

*85 The granting of a right-of-way over land does not pass any other right or incident. The owner of the soil retains full dominion over his land subject merely to the right-of-way. He may make any use of his land which does not interfere with reasonable use of the way.
In McDonald v. Board of Mississippi Levee Commissioners, 646 F. Supp. 449, 466 (N.D.Miss. 1986), aff. 832 F.2d 901 (5th Cir.1987), the Court stated: "While it is true that the owner of an easement obtained by grant or prescription has the implied right to work the land to keep it in a reasonably useable condition for its intended purpose, the easement owner `cannot lawfully take dominant possession and deal with [the land upon which easement exists] as if he were the owner of the land.'" Quin v. Sabine, 183 Miss. 375, 183 So. 701, 702 (1938).
By Board of Supervisors Order, Rowell has a statutory private way of necessity. In 1954, this Court construed the statute giving Boards of Supervisors the authority to establish a private road as a way of necessity:
The statute undertakes to grant a right of way where necessary for ingress or egress. We think that under the statute, if it be constitutional, the petitioner, lumber company, must show that it has been unable to obtain a right of way by contract or agreement not only from the party whose property he seeks to invade, but by any other reasonable way he seeks to secure from other persons a right of way... . There must be real necessity before private property can be invaded by a citizen for private purposes, if that can be done at all. The right to the control and use of one's property is a sacred right, not to be lightly invaded or disturbed. When property may be taken from a citizen for any purpose by law, the method for so doing must be strictly pursued, and the party seeking to take the property of another must come squarely within the statute.
Roberts v. Prassenos, 219 Miss. 486, 491-92, 69 So.2d 215, 217 (1954). More recently, in Broadhead v. Terpening, 611 So.2d 949 (Miss. 1992), we affirmed the chancery court judgment which recognized the dominant tenant had a right of way of necessity in a private road across land of another. In Broadhead, we stated and recognized the rule that "easements or rights-of-way by necessity last as long as the necessity exists and terminate when other access to the landlocked parcel becomes available." Id. at 953.
Treatise writers emphasize that without necessity there is no basis for such an easement and where justified the easement is a limited one:
R. Eubanks and R. Bouchard, Harvey Law of Real Property and Title Closing, § 301.02 at p. 177 (1985) relate:
An easement born of necessity is termed an easement by implication or an implied easement. The necessity must be real and not merely convenience. Such an easement is created, if at all, by conveyance. Implicit in a sale by the owner of a tract of land, bordering on a main road of a rear section of the land having no access to the road, may be a right of way easement over the vendor's land to the road.
R. Powell, The Law of Real Property § 410 (1949 and Supp. 1989) states:
A transfer of an interest in land sometimes gives rise to circumstances which justify the implication that an easement must necessarily have been granted or reserved by the grantor. The most frequently encountered type of such an easement by necessity is a right-of-way. When an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor, or by the conveyor plus strangers, a right of access across the retained land of the conveyor is normally found. Without such a finding the conveyed inner portion would have little use, save by helicopter, and helicopters did not factor into the thinking of legal minds over the centuries during which this law crystallized.
Tiffany Real Property § 793 at 179 (3rd ed. Supp. 1990) states:

*86 A "way of necessity" is an "easement" arising from an implied grant or implied reservation, and it is the result of the application of the principle that whenever a person conveys property, he conveys whatever is necessary for the beneficial use of that property, and retains whatever is necessary for the beneficial use of the land he still possesses. (citations omitted)
In Lindsey v. Shaw, 210 Miss. 333, 340, 49 So.2d 580, 584 (1950), this Court held:
Where private right of way exists, the owners of the dominant and servient tenements must each use the way in such a manner as not to interfere with one another's utilization thereof. Feld v. Young Men's Hebrew Association, 208 Miss. 451, 458, 44 So (2d) 538 [1950].
The chancellor's conclusion that a locked gate did not unreasonably interfere with Rowell's use of the private way is supported by the record and the applicable law.
In Board of Trustees of University of Mississippi v. Gotten, 119 Miss. 246, 80 So. 522 (1919), this Court held that erection of a gate is not an unreasonable interference with the enjoyment of a vested right of passage.
In Lindsey v. Shaw, 210 Miss. 333, 49 So.2d 580 (1950), the particular facts supported the chancellor's ruling that a gate across a private way did not have to be removed. However, nailing it shut or keeping it locked was an unreasonable interference. That court recognized "... the weight of authority is that in the case of agricultural land the owner of land burdened with a right of way acquired by prescription may erect gates at the ends thereof even though no gates were erected until after acquisition of such easement by prescription." Id. at 338.
Where, as here, the right of way grant in the deed is silent, courts look to the surrounding circumstances to determine the intention of the grantor and the grantee.
1) 25 Am.Jur.2d Easement § 91 (1966) states:
Generally, the grant of a way without reservation of the right to maintain gates does not necessarily preclude the owner of the land from having them; unless it is expressly stipulated that the way shall be an open one or it appears from the terms of the grant or the circumstances that such was the intention, the owner of the servient estate may erect gates across the way if they are constructed so as not to interfere unreasonably with the right of passage. In the absence of an express reservation of such right, however, it is the general rule that whether he may erect and maintain gates, bars, or fences across or along the easement of way depends on the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case, the nature and situation of the property subject to the easement, and the manner in which the way has been used and occupied. This is a question of fact and is to be determined as such.
2) 28 C.J.S. Easement § 98 at 781-82 (1941) states:
Whether the grantee of a right of way is entitled to a way unobstructed by gates depends on the terms of the grant, its purposes, nature, and situation of the property, and the manner in which the way has been used and occupied. The grant of way without any reservation of a right to maintain gates does not necessarily imply that the owner of the land may not do so. Unless it is expressly stipulated that the way shall be an open one, without gates, or it appears from the terms of the grant or the circumstances of the case that such was the intention of the parties, the owner of the servient estate may erect gates, or even bars across the way provided they are so located, constructed, and maintained as not unreasonably to interfere with the right of passage, and provided they are necessary for the preservation and proper and efficient use of the lands constituting the servient estate.
3) 28 C.J.S. Easement § 98 at 781 (1941) states:

*87 Unless the contrary is expressly stipulated or appears to be the parties' intention, the owner of the servient estate may erect gates or bars across a way provided they are so located, constructed, and maintained as not unreasonably to interfere with the right of passage and they are necessary for the preservation and use of the servient estate.
4) Annotation, Right to Maintain Gate or Fence Across Right of Way, 52 A.L.R.3d § 2(a) (1973) provides:
Thus, in holding lawful in such cases a gate across a way acquired by grant, the courts have emphasized, as factors influencing their conclusions, the presence of the gate across the way at the time of the grant or during another period of time, the agricultural use of the servient estate... .
The record confirms that Turnage used his land as a cattle farm from the time he purchased it in 1969.
Examples of application of this general rule by other courts follow:
The West Virginia court in Hoffman v. Smith, 172 W. Va. 698, 310 S.E.2d 216 (W. Va. 1983) stated the general rule that unless there is specific language in the grant of an easement to the contrary, the grantor of a right-of-way over farm land retains a right to erect gates, provided they do not unreasonably interfere with the use of the easement. The very character of the land makes gates essential to the proper and reasonable use of the way.
The chancellor correctly restricted the private way of necessity by holding that it could not be used as an easement for water, sewage and electricity. Sumrall v. United Gas Pipe Line Co., 232 Miss. 141, 148, 97 So.2d 914, 916 (1957).
A New York court held an easement created by grant of a right-of-way for ingress and egress to defendant's landlocked property does not carry with it by implication an easement to transmit electricity to the property over the right-of-way. McCormick v. Trageser, 24 N.Y.2d 873, 301 N.Y.S.2d 622, 249 N.E.2d 467 (1969).
The rights and obligations of Turnage and Rowell governing the private way are reciprocal. However, the division of ownership rights in the private way between the servient owner (Turnage) and dominant owner (Rowell) does not prohibit Turnage from fully exercising and protecting those property rights retained. Rowell failed to prove that Turnage's maintenance and use of a locked gate in his cattle operation since he acquired the land in 1969 was an unreasonable restriction of the private way.
Based on our plenary review of the chancellor's application of the law to the stipulated facts, we find no error.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
JAMES L. ROBERTS, Jr., J., not participating.

NOTES
[1] Issue No. 3 is in the nature of a hypothetical question directed to this Court for an advisory opinion. This Court has consistently held it will not give advisory opinions. See Game and Fish Commission v. Marlar, 206 So.2d 628, 631 (Miss. 1968).