893 So.2d 239 (2004)
William B. VINOSKI and Wife, Roberta N. Vinoski, Appellants,
v.
C.M. PLUMMER, Ronnie Plummer and C.M. Plummer, III, Appellees.
No. 2002-CA-02109-COA.
Court of Appeals of Mississippi.
May 25, 2004.
Rehearing Denied October 26, 2004.
Certiorari Denied February 10, 2005.
*240 Joseph R. Meadows, Gulfport, attorney for appellants.
Floyd J. Logan, Gulfport, attorney for appellees.
Before KING, C.J., THOMAS and MYERS, JJ.
THOMAS, J., for the Court.
¶ 1. The Vinoskis and Plummers are neighbors, each having received their property from a common source. The Plummers filed a complaint to obtain an easement by necessity across the Vinoskis' property. The Chancery Court of Harrison County granted the easement. Aggrieved, the Vinoskis assert the following issues on appeal:
I. THE TRIAL COURT ERRED IN GRANTING THE EASEMENT BECAUSE THE PLUMMERS HAD AN ADEQUATE REMEDY AT LAW FOR ESTABLISHING A PRIVATE RIGHT-OF-WAY PURSUANT TO MISS. CODE ANN. SECTION 65-7-201, ET SEQ.
II. THE TRIAL COURT ERRED IN GRANTING THE EASEMENT BECAUSE THE PLUMMERS HAD A MORE DIRECT AND REASONABLE ACCESS TO THEIR PROPERTY.
III. THE TRIAL COURT ERRED IN GRANTING THE EASEMENT BECAUSE AN EASEMENT OF ANY KIND ACROSS THE VINOSKIS' PROPERTY WOULD SEVERELY DAMAGE THE PROPERTY, WOULD ENCROACH ON THE HOME OR OUTBUILDINGS, WOULD DISRUPT THE VINOSKIS' PRIVACY, AND WOULD PREVENT THE VINOSKIS FROM THE PEACEFUL AND QUIET USE AND ENJOYMENT OF THEIR PROPERTY.
IV. THE TRIAL COURT ERRED IN GRANTING THE EASEMENT BECAUSE IT WAS A TAKING OF THE VINOSKIS' PROPERTY WITHOUT JUST COMPENSATION, ALL OF WHICH IS GUARANTEED BY THE CONSTITUTION OF THE STATE OF MISSISSIPPI, AND THE UNITED STATES CONSTITUTION TO THE EXTENT THAT A PERSON'S PROPERTY MAY NOT BE TAKEN WITHOUT JUST COMPENSATION.
Finding no error, we affirm.

FACTS
¶ 2. In 1979, the Schermer family obtained a rectangular parcel of land in Harrison County which fronts 220 feet along Old Highway 49 and extended west 2,492 feet. In 1986, Sheila Schermer Casey conveyed a portion of the property to Floyd Smith. The property conveyed to Smith contained all of the frontage on Old Highway 49 and extended west approximately 460 feet. Casey retained the rest of the property at this point which was now landlocked and extended approximately 2,023 feet west of the property conveyed to Smith.
¶ 3. In 1996, Floyd Smith conveyed his portion of the property to the appellants, William and Roberta Vinoski. At the time of trial, the Vinoskis had a house and pool approximately centered on their property, and a barn slightly farther back on the south side behind the house. In 1999, *241 Casey conveyed the property that she had retained to the appellees, C.M. Plummer, Ronnie Plummer, and C.M. Plummer, III. The Plummers are builders and developers and purchased the land knowing that it was landlocked but hoped to develop it at a later date. The surrounding land is owned by James Bond.
¶ 4. On December 21, 1999, the Plummers filed a complaint to obtain an easement by necessity across the Vinoskis' property, requesting damages, costs of suit, and other relief that the court might deem proper. The Vinoskis responded, stating that the Plummers had a plain and adequate remedy at law, had a more direct and reasonable access to the property, that the taking of the easement by necessity without compensation would violate the Mississippi and United States Constitutions, and the Plummers knew that the property was landlocked when they purchased it. The Vinoskis were allowed to add the City of Gulfport as a necessary party due to a utility easement which the city had that ran across the Plummers' property.
¶ 5. The trial court dismissed the City of Gulfport after the city's attorney informed the court that the city only retained a water and sewer easement and in its opinion did not have the authority to grant a roadway-type easement to the Plummers. According to the city, it would not object to the Plummers' use of the easement as long as it did not affect its ability to maintain or install water or sewer lines, but that the actual landowner should be brought in to determine the landowner's rights in the matter. The city did not know who the landowner was, but indicated that it had initially received its utility easement from Orange Grove Utilities.
¶ 6. At trial, C.M. Plummer testified that the most direct and shortest route for access to his property would be across the Vinoski property, less than 500 feet to Old Highway 49. Plummer testified that he only wanted a temporary easement thirty feet wide in order to provide access to his property, but that he would not build a road. Although he wanted to develop the property, he understood that it would need a fifty foot right-of-way for development and that he would obtain that at a later date from another source as other property surrounding his was developed into subdivisions, which he estimated would take place in four to five years. Plummer testified that the distance from his property to the paved road over the city easement was 1,000 feet and that it was very muddy and he bogged up to his ankles when he tried to walk it. The Bond property is wooded and rough terrain and Plummer testified it would cost approximately $75,000 to $95,000 to gain access across it, and that it would be a greater distance than the access granted across the Vinoski property. Plummer also testified that a prior logging road which he referred to as more of a "trail" on the Bond property did not contact his property.
¶ 7. Roberta Vinoski testified that her property contained a series of large mature trees along the south property line, and that her gas meter and water well were within forty feet of the property line and her barn was forty feet from the line as well. Her home is forty seven feet from the northern property line. Vinoski testified that she is a real estate agent and that a thirty foot easement would destroy her privacy and diminish the value of her property by approximately forty to fifty thousand dollars as well as make the property hard to sell. Finally, a thirty foot easement would reduce her frontage on Old Highway 49 from approximately 230 feet to 200 feet. Vinoski testified that she did not want an easement across her property and that she felt there were other *242 reasonable access routes to Plummer's property, including the logging road on Bond's property, the city water and sewer easement, and other access routes across the Bond property.
¶ 8. The chancellor inspected the property and ruled the Plummers were entitled to an easement which would begin at Old Highway 49 along the south side of the Vinoskis' property. The chancellor did not grant the thirty foot easement sought by the Plummers, however, instead he granted only a twelve foot easement that weaves closely beside the shrubbery, avoiding trees, and goes between the barn and the shrubbery to the back of the Vinoski property. Since the easement goes through a fence put up by the Vinoskis, the Chancellor ruled the Plummers may install a gate consistent with the style and quality of the Vinoskis' fence. The Plummers were not given the option of removing trees except at the southwest corner where it meets their property. No damages were granted and the easement was deemed temporary and was to terminate at such time as any other road access became available.
¶ 9. The Plummers filed a motion to alter or amend the judgment requesting that the easement by necessity be increased from twelve to twenty feet wide. The original chancellor retired shortly after the filing, and a new chancellor heard the motion. The new chancellor also went to the property, and in denying the Plummers' motion stated that in his opinion the easement should have only been granted as a measure of last resort after requiring the Plummers to actively seek other potential avenues. The new chancellor felt that the easement would reduce the value of the Vinoskis' property substantially and agreed with the Vinoskis that an easement wider than twelve feet would require destruction of several large, mature trees that would damage the property even further. The Vinoskis then perfected an appeal to this Court

ANALYSIS

I. DID THE TRIAL COURT ERR IN GRANTING THE EASEMENT BECAUSE THE PLUMMERS HAD AN ADEQUATE REMEDY AT LAW FOR ESTABLISHING A PRIVATE RIGHT-OF-WAY PURSUANT TO MISS. CODE ANN. SECTION 65-7-201, ET SEQ.?
¶ 10. The Vinoskis assert the Plummers had an adequate remedy at law for establishing a private right-of-way pursuant to Mississippi Code Annotated Section 65-7-201. Although amended in 2003 to provide that county courts should hear such petitions, at the inception of the litigation at bar, Section 65-7-201 provided a statutory right to anyone whose property was landlocked and who desired a private road laid out through the land of another for purposes of ingress and egress. A landowner accomplished his intentions by filing a petition with the county board of supervisors in the county where the land was located. The Vinoskis assert that the Plummers could have petitioned the board and the board could have granted an easement through the uninhabited land of the Bond property to the north or over the utility easement owned by the City of Gulfport.
¶ 11. As in the case of Broadhead v. Terpening, 611 So.2d 949 (Miss.1992), the Vinoskis are correct in their underlying premise that where a complete and adequate remedy exists at law for a plaintiff's claim, the chancery courts should not intervene to award equitable relief. Id. at 954 (citing Moore v. Sanders, 558 So.2d 1383, 1385 (Miss.1990); Partee v. Kortrecht, 54 Miss. 66, 72 (1876)). However, as stated in Broadhead and subsequent case law, Section 65-7-201 does not provide *243 a complete and adequate alternative remedy to the recognition and enforcement of the Plummers' easement by way of necessity. Broadhead, 611 So.2d at 954-55; Cox v. Trustmark Nat. Bank, 733 So.2d 353, 356-57 (¶ 13-15) (Miss.Ct.App.1999).
¶ 12. The Vinoskis point out that Broadhead was a 4-4 decision affirming the trial court's acceptance of easement by necessity. However, as pointed out by this Court in Cox, there was no such division when the doctrine was later approved in Rowell v. Turnage, 618 So.2d 81, 85 (Miss.1993). Cox, 733 So.2d at 357(¶ 14). As we held in Cox,"[t]he fact that an alternative exists for a person who is landlocked but is not entitled to an easement by necessity in no way eliminates the value of the doctrine...." Id. at (¶ 15). It is undisputed that both the Vinoskis and Plummers received their land from what was originally a common source as required by the common law doctrine. Taylor v. Hays, 551 So.2d 906, 908 (Miss.1989) (citing Pleas v. Thomas, 75 Miss. 495, 22 So. 820 (1897)). This issue is without merit.

II. DID THE TRIAL COURT ERR IN GRANTING THE EASEMENT BECAUSE THE PLUMMERS HAD A MORE DIRECT AND REASONABLE ACCESS TO THEIR PROPERTY?
¶ 13. The Vinoskis assert that the Plummers had a more direct and reasonable access to their property than across the Vinoskis' land, specifically across the City of Gulfport's utility easement, a logging road on the Bond property, or across the wooded Bond property immediately to the north of the Vinoskis' property. The chancellor found the route across the Vinoskis' property to be the shortest and most reasonable. The evidence before the chancellor showed the Vinoskis' property to be the shortest route to a paved road. The City of Gulfport, through its attorney, informed the court that it only retained a utility easement and could not grant the Plummers an easement to be used for ingress and egress. The city's rights pertained only to the maintenance and installation of water and sewer lines. The logging road was described as more of a "trail" by Mr. Plummer and he testified that it did not come anywhere near his property. The Bond property immediately to the north was found to be rugged and would cost substantially more to create an access way there.
¶ 14. This Court has a limited standard of review in examining and considering the decisions of a chancellor. McNeil v. Hester, 753 So.2d 1057, 1063(¶ 21) (Miss.2000). "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Fisher v. Fisher, 771 So.2d 364, 367(¶ 8) (Miss.2000) (citing Richard v. Richard, 711 So.2d 884, 888(¶ 13) (Miss.1998)). A chancellor's findings will not be disturbed upon review by this Court unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. Bank of Miss. v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992). "The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion." McNeil, 753 So.2d at 1063(¶ 21). This issue is without merit.

III. DID THE TRIAL COURT ERR IN GRANTING THE EASEMENT BECAUSE AN EASEMENT OF ANY KIND ACROSS THE VINOSKIS' PROPERTY WOULD SEVERELY DAMAGE THE PROPERTY, WOULD ENCROACH ON THE HOME OR OUTBUILDINGS, WOULD DISRUPT THE VINOSKIS' PRIVACY, AND WOULD PREVENT *244 THE VINOSKIS FROM THE PEACEFUL AND QUIET USE AND ENJOYMENT OF THEIR PROPERTY?
¶ 15. The Vinoskis assert that the trial court erred in granting the easement because an easement of any kind across their property would severely damage the property, would encroach on the home or outbuildings, would disrupt the Vinoskis' privacy, and would prevent the Vinoskis from the peaceful and quiet use and enjoyment of their property.
¶ 16. "It is well established that a way [of] necessity should be located so as to be the least onerous to the owner of the servient estate while, at the same time, being a reasonable convenience to the owner of the dominant estate." Taylor, 551 So.2d at 909 (citing Stair v. Miller, 52 Md.App. 108, 447 A. 2nd 109, 111 (1982)). The chancellor granted an easement only twelve feet wide that followed the southern property line of the Vinoskis' property and wound along beside the shrubs and between the trees. After having determined that an easement through the Vinoskis' property was the most direct and reasonable route, the chancellor attempted to make the route less "onerous" in its layout. The Vinoskis fail to demonstrate that the chancellor's findings are an abuse of discretion or are manifestly wrong. This issue is without merit.

IV. DID THE TRIAL COURT ERR IN GRANTING THE EASEMENT BECAUSE IT WAS A TAKING OF THE VINOSKIS' PROPERTY WITHOUT JUST COMPENSATION, ALL OF WHICH IS GUARANTEED BY THE CONSTITUTION OF THE STATE OF MISSISSIPPI, AND THE UNITED STATES CONSTITUTION TO THE EXTENT THAT A PERSON'S PROPERTY MAY NOT BE TAKEN WITHOUT JUST COMPENSATION?
¶ 17. The Vinoskis assert that the doctrine of easement by necessity is antiquated and provides for an illegal taking of property contrary to the Mississippi and United States Constitutions. The Vinoskis point to the case of Broadhead v. Terpening, cited above, as being a split decision that came very close to abandoning or modifying the common law rule in this jurisdiction. In support of their argument, the Vinoskis cite heavily to the dissent in Broadhead. As pointed out above, however, the Mississippi Supreme Court later referred to the doctrine with approval in Rowell v. Turnage, 618 So.2d at 81, 85 (Miss.1993). This Court stated in Cox that "[w]e find the easement by necessity principle to be alive and well." Cox, 733 So.2d at 357(¶ 15). This issue is without merit.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES, P.J., IRVING, MYERS AND GRIFFIS, JJ., CONCUR.
SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND CHANDLER, JJ.
SOUTHWICK, P.J., Dissenting:
¶ 19. This case requires us to define the term "necessity." I agree with the majority on general legal principles but disagree as to their application. With respect both for the majority and for the chancellor, I find on these rather unusual facts that no necessity has been shown.
¶ 20. I agree with the majority that this is in most particulars a classic set of facts for an easement by necessity. What once was a tract with common ownership was split in two in 1986. The owner of the *245 whole conveyed the eastern portion of it to someone else, who in turn conveyed the property to the appellees. Only that eastern portion had frontage on a public road. Subsequently, the former owner of the whole conveyed the retained, landlocked portion to the present appellants.
¶ 21. An easement for access to the carved-out tract arises from an implication that the law has long made: no owner of the whole would convey or retain a landlocked portion. Cox v. Trustmark Nat. Bank, 733 So.2d 353, 356 (Miss.Ct.App.1999). If the parties intend at the time of the creation of the landlocked portion not to create an easement and to use some other access route, and if that intent "is inescapably manifested," then no implied easement arises. 4 POWELL ON REAL PROPERTY § 34.07[1] (2000). There is no evidence offered here, by testimony or on the face of the recorded instruments, that reveal an intent contrary to the creation of an easement.
¶ 22. Where I find the proof to fail is on the basis of strict necessity. It is true that even when an opportunity exists to acquire an easement from a third party, the easement by necessity doctrine still applies. Pleas v. Thomas, 75 Miss. 495, 22 So. 820 (1897), cited in Broadhead v. Terpening, 611 So.2d 949, 954 (Miss.1992). However, once an alternative easement is actually acquired, the easement by necessity disappears. Taylor v. Hays, 551 So.2d 906, 908 (Miss.1989). The record reveals that, at the present time, no alternative easement has been obtained. The record is equally clear that the landlocked parcel owners believe that they must and will obtain an alternative easement in order to realize the value of their property. Development of their parcel requires more than a narrow road through the land to the east owned by the Vinoskis. I believe that the claimants must show a strict necessity for an easement in this interim period.
¶ 23. An easement by necessity is for access and minimal necessary utilities. Huggins v. Wright, 774 So.2d 408, 412 (Miss.2000); Bivens v. Mobley, 724 So.2d 458, 462-63 (Miss.Ct.App.1998). If the Plummers need a broad boulevard or other substantial road, the doctrine of necessity does not require that their neighbor provide so much of their land as is needed. The Plummers do not seek such a road. Instead they are alleging that a temporary easement, recognized as ineffective for the intended use of the land in the relatively near future, is a necessity. I disagree with this interpretation. There is no necessity for an interim easement unless no reasonably effective and necessary access can be obtained prior to the acquisition of the planned later easement. This interpretation is consistent with precedents that if a landlocked tract owner acquires an alternative access because the servient estate owner is denying use of the easement by necessity, such temporary access does not cancel the easement by necessity. Pitts v. Foster, 743 So.2d 1066, 1069-70 (Miss.Ct.App.1999) (easement from U.S. Forest Service, which could be cancelled at discretion of the Regional Forester, was not a substitute for the easement by necessity). The present case presents the opposite set of facts. The dominant estate owners agree that in the next few years they want and will need to replace any easement gained in this suit.
¶ 24. The recognized rule is that "easements or rights-of-way by necessity last as long as the necessity exists and terminate when other access to the landlocked parcel becomes available." Rowell v. Turnage, 618 So.2d 81, 85 (Miss.1993), quoting Broadhead, 611 So.2d at 953. The easement by necessity doctrine should not be used to interfere with the vital property rights of the servient estate owner by granting a temporary easement unless there is an actual necessity prior to the *246 time that the needed alternative route can be acquired. Usually the necessity is for a permanent easement; the availability of alternative but not procured routes is irrelevant. Conversely, I find that determining "necessity" for a temporary easement that will be replaced in the near future should consider suitability and availability of an alternative and the relative impact on the parties of requiring use of the implied easement.
¶ 25. In light of these considerations, there has not been adequate proof of necessity. There was some evidence of the difficulties and expense of gaining access across one particular route to the north. Yet such an expense and perhaps greater ones will be voluntarily incurred in the near future. Easements by necessity arise from equitable considerations. The equities require actual necessity and not mere convenience. As an equitable remedy for this court, I would remand for an evidentiary hearing so that the actual necessity of a temporary easement across the Vinoski property can be explored in light of the expense and availability of other options.
LEE AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.