924 So.2d 569 (2005)
Karen Rushing CRAWFORD, Appellant
v.
Bruce E. BUTLER and Wife, Appellees.
Karen Rushing Crawford, Appellant
v.
Bruce E. Butler and Wife, Margaret O. Butler, Appellees.
Nos. 2003-CA-02283-COA, 2003-CA-02285-COA.
Court of Appeals of Mississippi.
November 29, 2005.
Rehearing Denied March 21, 2006.
*571 Carol Ann Estes Bustin, Hattiesburg, attorney for appellant.
William H. Jones, Jackson, attorney for appellees.
*572 EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. This appeal results from litigation between neighbors in Jones County. The suit was originally filed in 1999 as Bruce Butler and Margaret O. Butler (the Butlers) v. Karen Rushing Crawford and Steven Earl Crawford (Butler I). The Butlers alleged that the Crawfords were impeding the Butlers' access to their property which adjoined the Crawfords' land. The Butlers also sought permission to install a waterline beneath the Crawfords' driveway. A trial was held on February 17, 2000, and the chancellor took the matter under advisement. The chancellor never ruled on the matter; therefore, in 2002 the Butlers again filed suit (Butler II) with nearly identical allegations. The parties agreed to submit the case to the chancellor based upon the testimony transcripts from Butler I, in addition to filing exhibits and briefs.
¶ 2. During the course of the litigation, the Crawfords divorced. Karen Rushing Crawford now owns the property in question. Although Karen Rushing Crawford's brief refers to her as Dr. Rushing, for the sake of clarity this Court will refer to her as Crawford, the name utilized throughout the course of the litigation.
¶ 3. On September 5, 2003, the chancellor ruled that the Butlers had an easement by conveyance for ingress and egress across Dr. Crawford's property, that Dr. Crawford had no right to obstruct the easement with a locked gate or otherwise, and that the easement carried with it the right to construct and maintain utilities. It is from this judgment which Dr. Crawford now appeals, arguing seven points, which are reproduced below.

FACTS
¶ 4. In 1978, David Cox purchased property on R.V. Lindley Road in Jones County. Cox built a home on the Leaf River, constructing a private driveway spanning the 1.1 miles from the house to R.V. Lindley Road. He fenced the length of his property along the road and installed a gate at the intersection of the private drive and the road.
¶ 5. In 1991, the Crawfords purchased two tracts of land off R.V. Lindley Road from Cox. The first tract comprised 2.81 acres, and the second tract comprised 6 acres and the house. Testimony at trial established that sometime after this conveyance, Cox created an easement granting the Crawfords access to their house; however, the easement is not included in the record.
¶ 6. On September 8, 1994, Cox sold twenty-five acres south of the private drive to Sarah Blackwell. The private drive ran between the Blackwell property and land retained by Cox. Attached to Blackwell's deed was an exhibit reserving a sixty-foot easement; however, the exhibit is neither referenced in the deed, nor signed by either Cox or Blackwell. On September 12, 1994, Cox sold 133 acres to Chandler and Jennifer Sholar. The Sholars' tract ran parallel to R.V. Lindley Road, and their deed included all of the fencing along the road, the gate to the private drive, and the front part of the driveway. The Sholars' deed specifically excepted from purchase the sixty-foot easement delineated in the Cox-Blackwell deed.
¶ 7. In July of 1995, the Butlers purchased Blackwell's property, and the following next year the Crawfords purchased the Sholars' tract of land. In 1999, the Butlers informed the Crawfords that they wanted to run a waterline to their property, and would, therefore, need to run the line beneath the Crawfords' driveway. *573 The Crawfords refused to grant the Butlers permission, and the Butlers prepared to dig the water line, heightening the tensions between the families.
¶ 8. The rift between the Crawfords and the Butlers grew. Although the Crawfords kept the gate to the drive locked, the Butlers would cut the locks to access their property. With the gate unlocked, Dr. Crawford has been unable to keep live-stock, as the Sholars once did, and Dr. Crawford has had numerous trespassers. Furthermore, the Butlers brought heavy equipment across the driveway en route to their property, damaging the driveway. Dr. Crawford's other complaints will be discussed as appropriate throughout the opinion.

STANDARD OF REVIEW
¶ 9. This Court will not disturb findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990). Where there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989).

DISCUSSION OF ISSUES

I. DID THE CHANCELLOR ERR IN FINDING THAT THE BUTLERS HAVE AN EASEMENT BY CONVEYANCE?
¶ 10. Dr. Crawford argues that she possesses the true deed by which Cox sold his land to Blackwell. The Cox-Blackwell deed was executed on September 8 and filed on September 12, 1994, and is comprised of four pages, the fourth of which is titled "Exhibit A." Exhibit A is labeled "Description of a 60 foot wide road easement" and contains the description of a 2.93 acre tract of land. The exhibit to the Cox-Blackwell deed reserves the right of egress and ingress. Crawford argues that because the Cox-Blackwell deed does not refer to Exhibit A, and because Exhibit A is not signed, dated or notarized, no right of egress and ingress was conveyed to Blackwell in the Cox-Blackwell transaction. Dr. Crawford argues that the instrument used to convey the easement is flawed; therefore, no right to ingress or egress was transferred from Cox to Blackwell and then Blackwell to the Butlers.
¶ 11. The Cox-Sholar deed, executed September 12, 1994, is subject to all easements of record. Crawford argues that because the Cox-Blackwell deed did not successfully reserve the easement, the Cox-Sholar deed was not subject to any easement.
¶ 12. Dr. Crawford further argues that the deed supplied by the Butlers and used by the Butlers in Butler I is a fake deed and does not exist anywhere in the courthouse land records. This deed was recorded on September 14, 1994.
¶ 13. The Butlers respond that Dr. Crawford's argument was not advanced at trial and "flies in the face of the Appellants own stipulation." Indeed, at trial, Dr. Crawford's attorney stipulated that the Cox-Blackwell deed with Exhibit A was recorded at the Jones County courthouse on pages 359 through 362; furthermore, Dr. Crawford's attorney stipulated that the easement was of record at the time Dr. Crawford purchased her land from the Sholars. These stipulations are binding on the parties and the court. Benton v. Harkins, 800 So.2d 1186, 1187(¶ 8) (Miss.Ct. App.2001). Dr. Crawford may not now circumvent her prior stipulations. Accordingly, we do not address Dr. Crawford's *574 assertion that the deed is fictitious, and we limit our review to whether the Cox-Blackwell deed successfully transferred a right of egress and ingress.
¶ 14. An easement may be conveyed by grant, prescription or implication. Logan v. McGee, 320 So.2d 792, 793 (Miss. 1975). The chancellor found that via the Cox-Blackwell deed, Cox conveyed a valid easement. In construing the language of an easement, the rules for the interpretation of deeds and other written instruments apply. Hobgood v. Koch Pipeline Southeast, Inc., 769 So.2d 838, 843(¶ 24) (Miss.Ct.App.2000). An instrument that is clear, definite, explicit, harmonious in all its provisions and free from ambiguity must be given effect. Id. (citing Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss.1990)). The courts rely on the "four corners doctrine," under which "an instrument is considered as a whole, in order to ascertain the intention of the parties." Id. When separate documents are executed at the same time, by the same parties, as part of the same transaction, they may be construed as one instrument. Sullivan v. Mounger, 882 So.2d 129, 135(¶ 32) (Miss.2004). The chancellor found that the deed and exhibit, which were filed at the courthouse together as part of one transaction, constituted a valid easement. Indeed, the chancellor noted that Cox's testimony that he intended to convey an easement to Blackwell and that he negotiated the easement with Blackwell "puts [this] issue to rest." We find no error here.
¶ 15. Furthermore, assuming arguendo, that the documents failed to convey an easement, an easement by implication would exist. The terms "easement by necessity" and "easement by implication" are interchangeable. Swan v. Hill, 855 So.2d 459, 463(¶ 17) (Miss.Ct.App. 2003). Generally, "an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing the lands of another." Taylor v. Hays, 551 So.2d 906, 908 (Miss. 1989). The burden of proof is on the claimant seeking an easement by necessity; the party must establish that he is implicitly entitled to the right of way across another's land. Leaf River Forest Products, Inc. v. Rowell, 819 So.2d 1281, 1284(¶ 11) (Miss.Ct.App.2002).
¶ 16. The testimony at trial established that the disputed land was once owned by Cox. As the land was divided and sold, first to the Crawfords, then to Blackwell and the Sholars, the land in dispute was inaccessible, save for the private road extending from R.V. Lindley Road to the Crawford's driveway. Both the Blackwells and the Butlers used the road to access the land. Additionally, even Dr. Crawford made use of the easement to access her land prior to purchasing the Sholars's tract. Cox testified that he and Blackwell negotiated the easement and agreed to the easement as part of the sales transaction. We find that, even if the deed unsuccessfully created an easement, such an easement exists by implication. We find no error here. Dr. Crawford's argument is without merit.

II. DID THE CHANCELLOR ERR IN FINDING THAT THE EASEMENT INCLUDED UTILITIES?
¶ 17. This issue is controlled by Bivens v. Mobley, 724 So.2d 458 (Miss. Ct.App.1998). In that case, this Court found that in a negotiated easement for egress and ingress, "[i]ngress and egress for other necessities, whether carried in the vehicles or continuously conveyed underground, is included in the grant." Id. *575 at 464(¶ 28). This Court opined, "the `uses that are reasonably necessary for enjoyment of an easement change over time as technology changes and as use of the dominant and servient estates changes.'" Id., citing Restatement of Property § 4.10 cmt. c.
¶ 18. The chancellor found that under Bivens, the Butlers' easement included utilities. To use the land and build a house, the Butlers need utilities, as well as the ability to enter and exit the property. Dr. Crawford argues that because the Butlers have a well, "the law does not allow the Butlers to be choosey." We disagree. The testimony at trial established that the Butler's well water was not potable. Butler testified that the water was "red, rusted and it stinks" and that he had it tested and that the test results verified that the water was not fit for consumption. Thus, the logical result is that the Butlers do not have access to water without the ability to lay a water line and tap into community water. We agree with the Butlers' contention that "[y]ou can't survive without water." We find no error here. This issue is without merit.

III. DID THE CHANCELLOR ERR IN FAILING TO DELINEATE DR. CRAWFORD'S PROPERTY RIGHTS?
¶ 19. In her third assignment of error, Dr. Crawford argues that the chancellor erred in failing to delineate her property rights. Dr. Crawford specifically argues that she should be able to maintain a locked gate. In support of this assertion Dr. Crawford argues that she owns the entire sixty-foot easement. To the contrary, when Dr. Crawford purchased the Sholars' 130 acres, that purchase was "less and except" the sixty-foot wide easement. When the Sholars purchased the 130 acres from Cox, that purchase also excepted the sixty-foot wide easement. Upon this record, Dr. Crawford's claim of ownership over the easement is without merit.
¶ 20. Dr. Crawford further argues that maintaining a locked gate is not an unnecessary burden on the Butlers. Dr. Crawford cites Rowell v. Turnage, 618 So.2d 81 (Miss.1993), in support of her contention that her locked gate neither interferes nor obstructs the Butlers. Rowell is clearly distinguishable from the case sub judice. In Rowell, Turnage (the owner of the servient estate) used the gate and fence as part of his cattle operation which he had run since acquiring the land in 1969. The supreme court upheld the use of gate by the servient estate where Rowell (the owner of the dominant estate) failed to prove that the use of gate was an unreasonable restriction of the private drive. Id. at 87. Rowell knew of the cattle operation and the locked gates at the time he purchased the land, and Turnage supplied Rowell and previous owners with keys to the gate.
¶ 21. In the case sub judice, none of the previous owners consistently maintained livestock on the land. Although the Sholars fenced horses, the horses were in separate, fenced pastures away from the gate in question. Furthermore, the chancellor found that when Cox installed the gate, he left it open so that family, friends and emergency vehicles could access his property. The chancellor also found that the Butlers attempted to comply with Dr. Crawford's desire to have the gate locked, but when the Butlers would try to use the easement for their guests, the Crawfords would interfere.
¶ 22. We do not agree with Dr. Crawford's assertion that the locked gate does not present an unreasonable restriction on the Butlers' use of the land. On the facts of this case, we find no abuse of discretion in the chancellor's ruling. This issue is without merit.

*576 IV. DID THE CHANCELLOR ERR IN FAILING TO CONSIDER ANOTHER LOCATION FOR THE EASEMENT BY NECESSITY?
¶ 23. Dr. Crawford argues that the chancellor was obligated to determine whether a better location for the easements existed. Dr. Crawford cites to Frey v. Homochitto Plantation, Inc., 675 So.2d 1275 (Miss.Ct.App.1995), which is an unpublished opinion. Pursuant to Mississippi Rules of Appellate Procedure 35-B(b), opinions which have not been designated for publication shall not be cited, quoted or referred to by any court or in any argument except in continuing or related litigation. This case is not a continuation of the Frey case; therefore, reference to this case is impermissible, and it is hereby stricken.
¶ 24. Dr. Crawford presents no other authority in support of her contention that the chancellor must consider alternative pieces of land prior to ruling on the existence of the easement and what it encompasses. M.R.A.P. 28(a)(6) provides, "[t]he argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." The failure to cite relevant authority, or the failure to connect the relevant authority to the case procedurally bars consideration on appeal. King v. State, 857 So.2d 702, 725(¶ 70) (Miss.2003). Accordingly, we decline to review this issue.

V. IS THE CHANCELLOR'S FINDING IN VIOLATION OF FEDERAL, STATE AND LOCAL LAW?
¶ 25. Dr. Crawford argues that the chancellor's decision violates federal, state and local law, but frames no argument regarding any specific laws. Dr. Crawford also complains about the Butlers' daughter and grandchild and accuses the Butlers of dumping toxic material. Both of these allegations are unrelated to the existence of an easement and have no bearing on the propriety of the chancellor's ruling sub judice. Dr. Crawford further accuses the Butlers of the illegal transportation and use of firearms, alcohol and propane, but cites no authority in support of her argument that these actions, if true, invalidate the easement. Dr. Crawford has failed to relate relevant authority with the facts of the case; therefore, this issue is procedurally barred. Id.

VI. DID THE CHANCELLOR ERR IN GRANTING THE CRAWFORDS RELIEF THAT WAS IN EXCESS OF WHAT WAS SOUGHT IN THEIR COMPLAINT?
¶ 26. Once again, Dr. Crawford does not cite authority in support of this argument. The failure to cite relevant authority obviates this Court's responsibility to review this issue, and it is procedurally barred. Mann v. Mann, 904 So.2d 1183, 1185(¶ 12) (Miss.Ct.App.2004).

VII. DID THE CHANCELLOR ERR IN NOT DISMISSING THE COMPLAINT IN BUTLER II?
¶ 27. Dr. Crawford contends that the complaint filed in Butler II fails to comply with the requirements of M.R.C.P. 10(c) and (d) and should have been dismissed. This argument is without merit. At one time the failure to attach the written instrument upon which a claim or defense is founded was a fatal defect in Mississippi, but that is no longer the case. It remains prudent to attach such documentation as part of a clear statement of a claim or defense, but if such documentation *577 is not attached to a pleading that is otherwise sufficient the document may be obtained through discovery. M.R.C.P. 10(d) comment. We find no error here.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.