989 So.2d 953 (2008)
Allen DIAZ and Edna Diaz, Appellants
v.
Mary Ethel BOUNDS, Appellee.
No. 2006-CA-01634-COA.
Court of Appeals of Mississippi.
February 5, 2008.
Rehearing Denied June 17, 2008.
Certiorari Denied August 21, 2008.
*954 William L. Ducker, Purvis, attorney for appellants.
Jack Parsons, Wiggins, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CHANDLER, J., for the Court.
¶ 1. On September 21, 2006, the Chancery Court of Lamar County entered an order finding the Appellant, Allen Diaz, to be in contempt of court for failing to comply *955 with a prior judgment that required Allen and his wife Edna Diaz, among other things, to grant an easement to the Appellee, Mary Bounds. The chancellor ordered Allen to pay Bounds's attorney's fees and to be held in custody until he complied with the court order. Aggrieved, Allen appeals. He asserts the following issues on appeal:
I. The court erred by holding a contempt hearing on October 3, 2005, after granting the Diazes' attorney's motion to withdraw as counsel and granting the Diazes fifteen days to retain substitute representation.
II. The court should not have found Allen in contempt when it was his ailing wife who did not sign the easement.
III. It was error to find Allen in contempt when he signed an easement, just not the one preferred by Bounds.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Bounds filed a complaint in the Chancery Court of Lamar County on September 23, 2004, requesting a forty-foot easement across the Diazes' property. She claimed to have a right to a prescriptive easement across the property as a result of the use of the property for more than fifty years by her and her predecessor-in-title. Until the months preceding her filing of the complaint, Bounds claimed that her use of the property had been continuous and unimpeded. She also claimed that the Diazes had knowledge of her use of the property, which she drove across almost every day, because it was the only means she had of reaching her house.
¶ 4. Precipitating Bounds's filing of her complaint was the fact that the Diazes placed a gate across the road she used to travel to and from her home. They then began locking the gate, which required Bounds, who was sixty-eight years old at the time of the order now on appeal, to get out of her truck every time she goes out or comes home. Bounds testified that they later replaced the lock on the gate with a lock for which she did not have a key. On May 24, 2005, the chancellor entered a temporary order instructing the Diazes to remove the locks and allow the gate to remain open while the trial on the matter was pending. After this order, the Diazes began to use other devices to keep the gate closed, which Bounds had to remove every time she needed to go through the gate.
¶ 5. On the morning of October 3, 2005, the chancellor entered an order granting the Diazes' first attorney leave to withdraw as counsel and allowing the Diazes fifteen days to find substitute counsel. Nevertheless, later that same day, the chancellor proceeded with a hearing on the matter of contempt for failing to comply with the order requiring the gate to remain unlocked. On October 13, 2005, the chancellor entered an order finding Allen in contempt of court and ordering him to leave the gate open, to pay $2,500 in attorney's fees, and to serve ten days in jail. The jail time was suspended provided that he complied with the temporary order.
¶ 6. The parties subsequently reached an agreement on the matter, which the court memorialized in its December 27, 2005, judgment. Bounds would relinquish her prescriptive easement, and she would receive an easement from the Diazes along the north edge of their property where she would build a road to her house. The Diazes, however, failed to comply with the judgment, and Bounds filed another motion for contempt on April 17, 2006. Following a hearing on the motion, the chancellor found Allen in contempt for a second *956 time in an order dated September 21, 2006. The chancellor ordered Allen to pay Bounds's attorney's fees and to be placed in custody until he had complied with the judgment of the court. The Diazes then appealed following the second contempt order.

ISSUES AND ANALYSIS

I. Whether the court erred in holding the hearing on the first motion for contempt.
¶ 7. While this appeal was taken following the September 21, 2006, order of contempt, the Diazes' first point of error relates to the court's judgment filed on October 13, 2005. The Diazes claim that it was error for the court to hear Bounds's argument in support of her first motion for contempt only hours after it had allowed the Diazes' previous attorney to withdraw and had granted them fifteen days to find substitute counsel. They argue that because the court ignored its own order and proceeded with the hearing, the Diazes had no attorney to represent them for the contempt matter.
¶ 8. Rule 4(a) of the Mississippi Rules of Appellate Procedure allows for thirty days to file an appeal once judgment has been entered. The time limit for filing an appeal is jurisdictional and is strictly enforced. Redmond v. Miss. Dep't of Corr., 910 So.2d 1211, 1212 (¶ 4) (Miss.Ct. App.2005).
¶ 9. The chancellor's first order finding Allen in contempt was filed October 13, 2005. Furthermore, the order subsequently disposing of the ultimate issue in the case was filed December 27, 2005. The Diazes did not file a notice of appeal following the first judgment of contempt. Instead, they waited until September 21, 2006, after the court entered a second order finding Allen in contempt. This appeal is timely with regard to that second order, but it is not timely with regard to the first, which the court entered almost a year before the Diazes filed this appeal. Because the Diazes did not timely file an appeal from the October 13, 2005, judgment, we are procedurally barred from reviewing their first issue.

II. Whether the court erred in finding Allen in contempt when it was his wife who failed to sign the easement.
¶ 10. The Diazes' second and third issues stem from the September 21, 2006, judgment of contempt, from which they timely appealed. The Diazes argue that Allen should not have been held in contempt when it was his ailing wife who had not signed the easement.
¶ 11. Generally, "[c]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Mabus v. Mabus, 910 So.2d 486, 491 (¶ 20) (Miss.2005) (quoting Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990)). If the contempt is civil, the proper standard utilized for review is the manifest error rule. In re Williamson, 838 So.2d 226, 237 (¶ 29) (Miss.2002). A contempt order is for civil contempt if its purpose is to enforce the rights of a party or to enforce compliance with a court order. Id. (citing Purvis v. Purvis, 657 So.2d 794, 796 (Miss.1994)).
¶ 12. In the chancellor's ruling from the bench, he noted that "Mr. Diaz has consistently refused to abide by the orders of this Court, temporary orders as well as the final judgment." The chancellor went on to note that, on the stand, Allen was "very evasive" and "would not give straight answers." The chancellor also found that *957 Allen "has shown a total disregard for the orders of this Court and he does not intend to abide by the orders of the Court."
¶ 13. The evidence in the record supports the chancellor's findings. The court order at issue was clear. As agreed by both parties, the judgment filed December 27, 2005, ordered the Diazes to execute an easement to Bounds along the north side of their property, to move their fence located along the north side of their property, and to clear the trees and debris located on the right-of-way.[1] According to the terms of the judgment, the Diazes were to execute the easement within fifteen days and were to have the area cleared of trees and debris by January 31, 2006.
¶ 14. Nevertheless, it was uncontradicted that the Diazes did not comply with any of the terms of the judgment. When Bounds again filed for contempt, on April 17, 2006, the deadlines for compliance had long passed. Bounds placed in evidence a number of letters that her attorney mailed to the Diazes' attorney requesting that they comply with the judgment. One of the letters mentions an agreed extension of the deadline until March 31, 2006, to clear the trees, but the Diazes also failed to meet that deadline. At the time of the contempt hearing in September 2006, almost nine months after the judgment was filed, they had yet to take any action to satisfy the judgment. Notwithstanding Allen's wife's failure to sign the easement, Allen's own testimony provided that he did not sign the easement until the day before the second contempt hearing. As discussed in the next point of error, the proposed easement that Allen signed did not include all of the terms of the judgment. Bounds also testified that her use of the original driveway remained hindered after the court initially found Allen in contempt.
¶ 15. From the evidence presented, we cannot say the chancellor was in error in finding Allen to be in contempt. The chancellor found that Allen, who had already disobeyed a previous court order, had willfully disobeyed the judgment of the court requiring the Diazes to grant an easement to Bounds. In order to get Allen to finally grant the easement, and thereby secure the rights of Bounds, we find that the chancellor was within his discretion to order Allen to pay Bounds's attorney's fees and to place him in custody. This issue is, accordingly, without merit.

III. Whether the court erred in finding Allen in contempt when he signed an easement, just not the instrument offered by Bounds.
¶ 16. In his last point of error, Allen complains of his citation for contempt because, while he did not sign the easement drafted by Bounds, he did sign a form easement. The difference in the two proposed easements was that the document submitted by the Diazes did not contain language specifically including "the right to place any type of utilities thereon including but not limited to water, sewer, electric power, telephone, cable or any other like type utilities." Allen argues that language granting the right to place such utilities on the easement was unnecessary because appellate courts will read such rights into the grant of the easement.
¶ 17. Allen cites Keener Props., LLC v. Wilson, 912 So.2d 954 (Miss.2005) and Bivens v. Mobley, 724 So.2d 458 (Miss.Ct. App.1998), in support of his argument that it was unnecessary to include a provision *958 in the easement granting Bounds the right to place utilities on the right-of-way. This Court, in Bivens, 724 So.2d at 465 (¶ 29), did hold that the right to ingress and egress for other necessities will be included in a grant of an easement. However, we do not see why this ruling should prevent the Diazes from signing an easement that contained a provision specifically granting such a right.
¶ 18. The placement of utilities on the right-of-way was provided for in the final judgment of the matter. The day after the chancellor's ruling, Bounds submitted a proposed easement to the Diazes that included the right to place utilities. The final judgment allowed fifteen days to sign an easement, but almost nine months later, Allen had yet to satisfy that judgment. Furthermore, Allen testified at his contempt hearing that he did not sign the easement, which he now argues in favor of, until just before the second contempt hearing.
¶ 19. We do not find the chancellor was in error in finding Allen in contempt. At the time of the hearing, he had not signed an easement that contained the necessary provisions nor had he cleared the agreed-upon right-of-way. The chancellor awarded Bounds the attorney's fees she expended and placed Allen in jail until he finally complied with the court order. We find this was within the chancellor's discretion, and this issue is without merit.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT.
NOTES
[1] In exchange, Bounds was to execute a quitclaim deed conveying to the Diazes the driveway she had been using to get to and from her home. She was then to construct a driveway on the land along the north side of the Diazes' property where the Diazes were to grant her an easement.