ISHEE, J.,
for the Court:
¶ 1. Robert Ray was terminated from his employment for assaulting and threatening another employee. Ray then filed for unemployment-compensation benefits with the Mississippi Department of Employment Security (MDES). He was denied benefits due to his misconduct. Thereafter, he appealed the MDES’s decision to the administrative-law judge (ALJ). The ALJ affirmed the MDES’s decision. Ray then appealed to the MDES Board of Review (Board), which also affirmed the decision. Next, Ray filed an appeal in the Lauderdale County Circuit Court. The circuit court affirmed the Board’s decision. Aggrieved, Ray appeals to this Court arguing (1) there was insufficient evidence to support the decision that he was discharged due to misconduct, and (2) his employer committed fraud by wilfully failing to provided the initial witness statements and videotape of the incident. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Ray was a substance-abuse counsel- or at the East Mississippi Correctional Facility in Meridian, Mississippi. The East Mississippi Correctional Facility was operated by GEO Group Inc. (GEO). On August 17, 2010, Ray assaulted and threatened Kino Reese, a unit manager at the facility. On September 11, 2010, Ray was terminated for violating GEO’s policy against threatening, fighting, or assaulting another employee. Ray then filed for unemployment-compensation benefits with the MDES. A claims examiner with the MDES investigated the events surrounding Ray’s discharge. The claims examiner determined that Ray was discharged due to disqualifying misconduct; therefore, he *737 was ineligible for unemployment-compensation benefits.
¶ B. Ray appealed the MDES decision to the ALJ, who on November 2, 2010, held a telephonic hearing. The following individuals testified at the hearing: Dorothy Pope, GEO’s human-resources manager; Kino Reese, a GEO unit manager; Christopher Thrift, a mental-health counselor; Ken Morgan, an investigator for GEO; and Ray. The videotape of the incident was not presented at the hearing.
¶ 4. Pope testified that she had watched a videotape of the incident that showed Ray approach and then poke Reese with his finger. According to Pope, Ray threatened Reese that he was going to kill him, but Ray later claimed the statement was misinterpreted. Pope stated that the corporate office ultimately made the decision to terminate Ray and that he was fired for unbecoming conduct, which included assaulting another employee.
¶ 5. Reese testified that on August 16, 2010, the day before the altercation, Reese saw an inmate sitting at Ray’s computer with Ray sitting next to the inmate. Allowing an inmate to use the computer violated company policy. When Ray saw Reese in the hallway, he and the inmate switched chairs. Reese then told his supervisor about the incident, which resulted in Ray’s computer being locked.
¶ 6. The next day, Ray approached Reese regarding the incident, but Reese refused to speak to him. According to Reese, Ray “then took his finger and ... hit [Reese] several times in the chest very aggressively.” Ray also told Reese that Reese “was trying to kill him[,] and he was going to kill [Reese] and ... [knew] how to kill [Reese].” Based on this conduct, Reese pressed criminal charges against Ray. Ray was found guilty of simple assault, although he has appealed his criminal conviction.
¶ 7. Thrift, an eyewitness to the assault, testified: “Ray came up to ... Reese and said[, ‘Y]ou’re trying to kill me[,’ while] poking him in the chest[, and then said, ‘B]ut I’m going to kill you first[,] and I know how to do it.[’]” According to Thrift, Reese did not respond, and Ray walked away.
¶ 8. Morgan testified regarding his investigation of the case. During the investigation, he gathered statements from Reese, Thrift, and two other individuals who had witnessed the assault. Morgan testified that there were no conflicting statements among those interviewed. He also watched the videotape of the altercation. Morgan testified that Ray admitted that he had told Reese he was going to kill him but that “it was taken out of context!,] and it wasn’t meant literally.” After compiling a report regarding the incident, Morgan sent the file to the corporate office for a determination on the matter.
¶ 9. Ray also testified at the hearing. First, he acknowledged that an inmate was sitting at his computer but maintained that the inmate was simply reading names off of the computer screen. Thus, he claims he did not violate company policy. Ray stated that on the day of the assault, he had asked Reese to come by his office, which Reese did not do. When he saw Reese in the hallway later that day, he approached Reese. According to Ray, he told Reese: “[You are] trying to get me fired, so I’m going to try to do the same to you by exposing the phony [m]aster’s degree that you have ... on file....” Ray claimed that he then shook his finger at Reese but never actually touched him.
¶ 10. Ray also testified that Morgan was lying because he never made any statement to Morgan; however, he admitted to writing a statement. Ray alleged that Reese and the other individuals in *738 volved were conspiring against him. He believed the conspiracy was in retaliation for a wage and hour claim he made against the warden in 2008.
¶ 11. Ray attempted to call three character witness to testify against Reese. The ALJ advised Ray that he would permit one character witness. However, after several unsuccessful attempts to contact each of the three character witnesses, no character witnesses testified.
¶ 12. On November 4, 2010, the ALJ affirmed the denial of unemployment-compensation benefits. The ALJ rejected Ray’s claim that the complaint was fabricated as retaliation for his wage and hour complaint against the warden. The ALJ stated: “The employer’s witnesses had nothing to gain by giving false testimony against the claimant[,] and the employer’s testimony is considered the more credible testimony in this matter.” Thus, the ALJ concluded that Ray did, in fact, assault Reese by poking him in the chest with his finger and threatening to kill him. Because these actions were “in disregard of the employer’s interests [and] constitut[ed] misconduct,” Ray was disqualified from receiving unemployment-compensation benefits.
¶ 13. On November 10, 2010, Ray appealed to the Board. He requested a rehearing and implored the Board to order GEO to send the videotape of the assault for review. The Board did not order the videotape. On December 2, 2010, the Board affirmed the ALJ’s decision and adopted the findings of fact and opinion of the ALJ.
¶ 14. Ray then appealed to the circuit court. On April 19, 2011, the circuit court affirmed the Board’s decision. The circuit court found the Board’s decision was supported by substantial evidence, and that Ray failed to produce sufficient evidence to overcome the presumption in favor of the Board’s decision. Ray now appeals.
STANDARD OF REVIEW
¶ 15. When considering an unemployment-compensation case, this Court’s scope of review is limited to questions of law. Welch v. Miss. Emp’t Sec. Comm’n, 904 So.2d 1200, 1201 (¶ 5) (Miss.Ct.App.2004)(citing Johnson v. Miss. Emp’t Sec. Comm’n, 761 So.2d 861, 863 (¶ 5) (Miss.2000)). “The findings as to the facts of the Board ... are conclusive if supported by substantial evidence and absent fraud.” Id. We will only disturb the denial of unemployment benefits if it is “(1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee’s constitutional rights.” Id.
DISCUSSION
¶ 16. Ray argues the circuit court erred by failing to reverse and remand the case to the Board to consider more evidence, specifically the videotape of the altercation. He asserts there was insufficient evidence to support the decision that he was discharged for misconduct. Finally, he alleges GEO committed fraud by wilfully failing to provide the initial witness statements and videotape.
I. Insufficient Evidence
¶ 17. Mississippi Code Annotated section 71-5-513 (Rev.2011) covers individuals disqualified from receiving unemployment-compensation benefits. It provides that an individual shall be disqualified from receiving benefits:
For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the department, and for each week thereaf *739 ter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.
Miss.Code Ann. § Yl — 5—513(A)(1)(b). The term “misconduct” as used in the statute is generally defined as “conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.” Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982)(citing Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941)). Furthermore, “[t]he burden of proof of good cause for leaving work shall be on the claimant, and the burden of proof of misconduct shall be on the employer.” Miss. Code Ann. § 71-5-513(A)(l)(c).
¶ 18. Substantial evidence exists to support the Board’s decision. Although the videotape of the altercation was never presented, several witnesses testified to viewing the videotape. Those witnesses stated the videotape showed Ray poking Reese in the chest with his finger. Reese and Thrift also testified that Ray poked Reese in the chest with his finger. In addition, they both testified that Ray threatened to kill Reese during the altercation. While Ray later claimed to Pope and Morgan that his statement was misunderstood, it was nonetheless established that he made the statement. During the hearing, Ray denied poking Reese in the chest and threatening to kill Reese; however, the ALJ found the other witnesses were more credible. Thus, the evidence was sufficient to establish the altercation occurred.
¶ 19. Moreover, Ray’s actions constitute misconduct under the statute. His employer had a policy against threatening, fighting, or assaulting an employee, which Ray clearly violated. Therefore, he is disqualified from receiving benefits. This issue is without merit.
II. Fraud
¶ 20. Ray asserts the decision by the ALJ was the result of fraud, based on the failure of GEO to provide the witness statements and videotape. He argues the videotape and witness statements would show that no assault occurred. Therefore, Ray claims that GEO’s failure to provide the evidence amounts to fraud.
¶ 21. Mississippi Rule of Appellate Procedure 28(a)(6) requires that an appellate’s brief “contain the contentions of [the] appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” Moreover, it is well-settled law that “[t]he failure to cite relevant authority, or the failure to connect the relevant authority to the case procedurally bars consideration on appeal.” Crawford v. Butler, 924 So.2d 569, 576 (¶ 24) (Miss.Ct.App.2005)(citing King v. State, 857 So.2d 702, 725 (¶ 70) (Miss.2003)).
¶ 22. Ray failed to cite any relevant authority regarding this argument. He briefly references one case, Tucker v. Mississippi Department of Employment Security, 10 So.3d 924 (Miss.Ct.App.2009). However, this case is not relevant to his assertion. In Tucker, we addressed whether the appellant’s right to a fair and impartial hearing was violated when the MDES considered one witness’s testimony after it was discovered that a portion of her testimony was false. Tucker, 10 So.3d at 926 (¶ 7). The witness was allegedly untruthful about her receipt of certain documents. Id. at (¶ 9).
¶ 23. Ray states this case reflects “[the] importance of [the] wilfully concealed and *740 absent evidence.” However, in Tucker, this Court ruled that the argument was without merit, and stated that “[o]nly if a witness is impeached to the extent that his or her testimony is rendered highly improbable or incredible is that witness’s testimony deprived of any probative value.” Id. (quoting Boles v. State, 744 So.2d 349, 851 (¶ 8) (Miss.Ct.App.1999)). Thus not only is this case not relevant to the current issue, but it is actually in opposition to any argument Ray might make that the witnesses’ testimony should not be considered in lieu of the videotape and witness statements.
¶ 24. In addition to Ray’s failure to cite relevant authority, he does not provide any facts or evidence to suggest GEO committed fraud other than the fact that the witness statements and videotape were not produced. Accordingly, we decline review of this issue.
¶ 25. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.